PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT BUTLER, | ) | |
| | ) | CASE NO. 1:13CV01236 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| ENVIROX, LLC, | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Defendant. | ) | **ORDER** [Regarding ECF Nos. 7, 11] |

Pending before the Court is a motion to transfer this case to the Central District of Illinois, ECF No. 7, filed by Defendant EnvirOx, LLC, and a motion for a conference and scheduling order, ECF No. 11, filed by Plaintiff Robert Butler.  Plaintiff filed an opposition to the motion to transfer at ECF No. 10.  Defendant did not file a reply.  The Court has reviewed the above, and, for the reasons provided below, denies the motion to transfer and grants the motion for a conference.

## I.  Procedural Background

This lawsuit involves a contract dispute between Defendant, a manufacturer and distributor of industrial cleaning products, and Plaintiff, formerly an independent sales agent for Defendant. The complaint in this action alleges the following facts.  *See* ECF No. 1.  Plaintiff worked for Defendant as an independent sales agent from October, 2003, through March, 2013.  Although Defendant's principal place of business is located in Danville, Illinois, Plaintiff worked out of his home in Mansfield, Ohio, and was compensated on a commission basis.  Plaintiff's geographic sales territory included all of Ohio, Kentucky, and West Virginia, and the western half of Pennsylvania.

The terms of the parties' working relationship was governed by a document titled,

(1:13CV01236)

"Manufacturers Representative Terms & Policies" ("Terms & Policies"), which Plaintiff received

from Defendant in October, 2003.  Sometime in early 2004, Plaintiff received an amended version

of the Terms & Policies.  On March 5, 2013, Defendant terminated Plaintiff as its agent.

Count One of the Complaint alleges that Defendant breached the amended Terms & Policies

by terminating Plaintiff without the required notice and by failing to pay certain commissions

allegedly owed to Plaintiff.  Count Two alleges that Defendant should be estopped from disclaiming

the existence or enforceability of the Terms & Policies and the amended Terms & Policies because

Plaintiff relied on the promises contained therein during his time as a sales agent for Defendant.

After the complaint was filed, Defendant moved to transfer this case to the Central District

of Illinois, where Defendant resides, on grounds of convenience and private and public interests.

ECF No. 7.  In support, Defendant filed a memorandum of law.  ECF No. 8.  Plaintiff filed an

opposition, ECF No. 10, and, subsequently, a motion for a conference and scheduling order, ECF

No. 11.  Defendant did not file a reply in support of its motion to transfers, and has waived its right

to do so under the local rules.  *See* L.R. 7.1.  The motion to transfer is ripe for adjudication.

## II.  Governing Law of Motions to Transfer

When analyzing a motion to transfer under the doctrine of *forum non conveniens*, there is a

strong presumption in favor of the plaintiff's choice of forum.  *Dowling v. Richardson-Merrell, Inc.*,

727 F.2d 608, 612 (6th Cir. 1984).  "'[U]nless the balance is strongly in favor of the defendant, the

plaintiff's choice of forum should rarely be disturbed.'" *Id.* (*quoting Gulf Oil Co. v. Gilbert*, 330 U.S.

501, 508, 67 S. Ct. 839, 91 L. Ed. 1055 (1947)).

"The first step in the *forum non conveniens* analysis is establishing an adequate alternative

(1:13CV01236)

forum." *Estate of Thomas ex rel. Estate of Rakestraw v. Toyota Motor Corp.*, 545 F.3d 357, 364 (6th Cir. 2008).  The second step requires balancing private and public factors "to determine whether a trial in [the] chosen forum would be unnecessarily burdensome for the defendant or the court." *Id.*

The private factors to be considered by the Court include (1) the relative ease of access to sources of proof; (2) availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; and (3) other practical problems that make trial of a case easy, expeditious, and inexpensive. *Toyota Motor Corp.*, at 545 F.3d at 364.  The relevant public factors include (1) court congestion; (2) the local interest in having localized controversies decided at home; (3) the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; (4) the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty. *Id.*

Plaintiff concedes that the Central District of Illinois would be an adequate alternative forum. ECF No. 10 at 7.  Therefore, the Court's analysis of whether this case should be transferred rests upon an assessment of the relevant private and public factors to determine whether keeping the proceedings in the Northern District of Ohio would unnecessarily burden Defendant.

### III. Discussion

Defendant offers several reasons why this case should be transferred.  *See* ECF No. 8 at 3-8. First, Defendant claims that it would be more convenient for the parties and the witnesses involved if this action took place in the Central District of Illinois.  Second, Defendant asserts that Illinois law governs the agreements at issue.  Finally, according to Defendant, the Central District of Illinois is

3

(1:13CV01236)

less congested than the Northern District of Ohio.

### A. Convenience

Defendant points out that its principal place of business is in Danville, Illinois. Defendant asserts that the majority of its employees who are witnesses to the relationships between Defendant and its sales agents, and to Plaintiff's job performance, reside in Illinois and Indiana, and are outside the subpoena power of the Northern District of Ohio. Moreover, according to Defendant, the records and papers concerning the purported contract between Defendant and Plaintiff, and the payment of commissions to Plaintiff, are in Illinois. Defendant argues that the Terms & Policies were made and issued in Illinois, "requests for payment of any commission" were submitted to Defendant in Illinois, and "any payments due" to Plaintiff were issued from Illinois

Defendant's argument that the Central District of Illinois would be a more convenient forum is unpersuasive. First, Plaintiff states that he is prepared to travel to conduct the depositions of Defendant's witnesses, and, if necessary, to file miscellaneous actions in the appropriate federal court for the issuance of deposition or trial subpoenas. Defendant should have no cause to quibble with Plaintiff's willingness to shoulder the extra work of accomplishing the above tasks.

Second, Defendant only refers to where its own witnesses reside. One of Defendant's defenses is that Plaintiff was terminated for "cause"; ECF No. 6 at 7; which, under the Terms & Policies, would relieve Defendant from paying a significant portion of the commissions claimed by Plaintiff. ECF No. 1 at 3. The witnesses who will be able to testify to Plaintiff's performance include distributors located in Plaintiff's sales territory, including Ohio, Kentucky, West Virginia, and Pennsylvania. Illinois, however, was not a part of Plaintiff's sales territory.

4

(1:13CV01236)

Finally, the location of the relevant papers and records does not weigh in favor of transferring this case. In this day in age, Defendant will have no trouble producing the relevant documents electronically. *U.S. ex rel. Daugherty v. Bostwick Laboratories*, No. 1:08CV00354, 2013 WL 2286960 at *2 (May 23, 2013 S.D. Ohio) ("nearly all of the documents will be produced electronically, which means that the location of the original documents is essentially irrelevant"). Moreover, Defendant does not contest that Plaintiff performed much of his work from his home in Mansfield, Ohio, and that located there are numerous relevant documents concerning his work performance, sales records, commissions due, and commissions received.

Based on the above, the Court concludes that convenience–Defendant's "private factor" argument–does not weigh in favor of transferring this case.

**B. Choice of Law**

Defendant argues that Illinois law governs the contract at issue. The parties agree that Illinois and Ohio both follow the choice of law analysis set forth in the Restatement (Second) of Conflict of Laws § 188(2) (1971). That provision provides that, in the absence of an effect choice of law by the parties, as is the case here, the factors to be taken into account when determining the applicable law include: (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties. *Id.*

Defendant argues that the place of contracting is Illinois because the Terms & Policies and subsequent agreements were made and issued in Danville, Illinois. The place of contracting, however, "is the place where occurred the last act necessary, under the forum's rules of offer and

(1:13CV01236)

acceptance, to give the contract binding effect . . . ."  Restatement (Second) of Conflict of Laws §
188 (1971), comment e.  Plaintiff submits his affidavit in which he testified that Taylor Stewart,
president or vice president of Defendant, first handed him the Terms and Conditions in Chicago, in
October, 2003, the month the business relationship began.  ECF No. 10-1 at 2.  When reviewing the
Terms & Conditions, Plaintiff informed Stewart that the written description of the terms of
compensation did not match the terms they had previously agreed upon.  ECF No. 10-1 at 3.  Later,
when Stewart was training Plaintiff in Dayton, Ohio, Plaintiff testified that Stewart handed him an
amended Terms & Policies, which was the first time Plaintiff received a document accurately
describing the agreed-upon terms of his contract.  ECF No. 10-1 at 3-4.  Plaintiff asserts that he
accepted the amended Terms & Policies by proceeding with the training.  Accordingly, at this
juncture, the evidence supports the conclusion that the place of contracting was in Ohio.

Defendant concedes that the negotiations "may have" partially occurred in Ohio.  Plaintiff
testified that, prior to October, 2003, he had phone conversations with Stewart about becoming a
sales agent for Defendant, and that each phone conversation occurred while Plaintiff was at home
in Mansfield, Ohio, and Stewart was at his home in Indianapolis, Indiana.  ECF No. 10-1 at 2.  As
mentioned previously, Plaintiff had additional discussions with Stewart about the terms of their
business relationship in both Illinois and Ohio.  At this juncture, this factor points slightly in favor
of Ohio as the primary place of negotiations.

With respect to place of performance, Defendant maintains that Plaintiff's requests for
payment of commissions were submitted in Illinois, and payments to Plaintiff were issued from
Illinois.  Plaintiff testified, however, that throughout his relationship with Defendant he performed

(1:13CV01236)

his work from home in Ohio, and, in addition, he regularly traveled to each of the states within his sales territory for the purposes of consummating sales to various of Defendant's distributors. ECF No. 10-1 at 5. Plaintiff also testified that he did not perform any work for Defendant in Illinois, and, in fact, only went to its Danville headquarters once, in 2006. ECF No. 10-1 at 5. The sole fact that Defendant processed the payment of Plaintiff's commissions in Illinois does not stand on equal footing with the fact that the work for which Defendant engaged Plaintiff to perform occurred primarily in Ohio. This factor thus weighs in favor of Ohio. Similarly, the subject mater of the contract–*i.e.*, the sale of Defendant's products to distributors located in Ohio, Kentucky, West Virginia, and Pennsylvania–tilts in favor of Ohio as opposed to Illinois.

The final factor does not tilt in either direction. Plaintiff is a resident of Ohio and conducts his business there. Defendant is an Illinois entity and has its principal place of business in Illinois.

Based on the foregoing analysis, weighing each of the conflict of law factors requires the conclusion that the contract between the parties is governed by Ohio law.

### C. Docket Congestion

Defendant points to statistics showing that during the twelve-month period ending December 31, 2012, the Northern District of Ohio had 10,052 cases pending in comparison with 1,459 in the Central District of Illinois. ECF No. 8-2 at 4. The absolute number of cases, however, does not give a full picture of the expediency with which cases are resolved in either fora. As even Defendant acknowledges, the median time from filing to disposition of all civil cases before the Northern District of Ohio was 9.7 months in comparison with 9.6 months before the Central District of Illinois. ECF No. 8 at 7. Moreover, the median time interval from filing to disposition by trial of

(1:13CV01236)

civil cases was 24.1 months in the Northern District of Ohio, which is less than the 32.3 month

interval for the Central District of Illinois.  ECF No. 8 at 7.

Therefore, Defendant does not show that docket congestion favors the transfer of this case.

### IV. Conclusion

The Court concludes that an evaluation of the relevant private and public factors do not

militate in favor of transferring this case from the Northern District of Ohio, the district of Plaintiff's

choice.  Defendant's motion to transfer is denied.  Plaintiff's motion for a conference and scheduling

order is granted in a separate Order (ECF No. 12).

IT IS SO ORDERED.

October 31, 2013                /s/ Benita Y. Pearson
Date                Benita Y. Pearson
                United States District Judge

8